In re CHARGIT INC. and National Check Record Corporation, Debtors.

WORLD TRAVEL VACATION BROKERS, INC.; The Academy of Music; the Fidelity Trust Co., Wayneco Enterprises, Inc.; Cafe Partners/Washington 1983 d/b/a Potomac; Leroy Adventures Inc. d/b/a Tavern on the Green; Flash Leroy, Inc. d/b/a Maxwell's Plum; The Lodge at Harvard Square, Inc.; Silver Autumn Hotel Corp., Limited; G.C.T. Dealers 420 Lex., Inc. d/b/a Grand Central Cameras; Mama Leone's, Inc. d/b/a Mama Leone's; Raroc, Inc. d/b/a American Festival Cafe, Seagrill and Savories; and Brasserie, Inc. d/b/a The Brasserie, individually and as representatives of a class of unnamed plaintiffs similarly situated, Plaintiffs,

v.

The BOWERY SAVINGS BANK, Mastercard International, Inc. and Visa U.S.A. Inc., Defendants.

Bankruptcy Nos. 86 B 12351, 86 B 12352 (BRL).
Adv. No. 87–5697A.

United States Bankruptcy Court, S.D. New York.

Dec. 29, 1987.

Anderson, Russell, Kill & Olick, P.C. by Arthur S. Olick, Roy Babitt, Anthony Princi, Nancy F. Shapiro, Eric W. Sleeper, New York City, for plaintiffs.

Weil, Gotshal & Manges by Richard A. Rothman, Thomas J. Weber, Howard B. Comet, John J. Rapisardi, New York City, for defendant.

Stroock & Stroock & Lavan by James Falick, New York City, for Mastercard International.

Parker Chapin Flattau & Klimpl by John Carlson, New York City, for Visa U.S.A., Inc.

### DECISION AND ORDER ON MOTION TO DISMISS

BURTON R. LIFLAND, Chief Judge.

### INTRODUCTION

On December 11, 1986, Chargit Inc. ("Debtor") filed a petition for reorganiza-

tion under Chapter 11 of Title 11 of the United States Code ("Code"). The Debtor continued to manage its business and property as debtor in possession, pursuant to 11 U.S.C. §§ 1107 and 1108 until April 10, 1987 when its case was converted to one under Chapter 7 of the Code.

In the instant proceeding defendant Bowery Savings Bank ("Defendant" or "Bowery"), joined in by the other defendants, has moved pursuant to Fed.R.Civ.P. 12(b)(1) as made applicable by Fed.R. Bankr.P. 7012(b) to dismiss the complaint filed by World Travel Vacation Brokers, Inc. and the twelve other captioned plaintiffs (collectively the "Plaintiffs"), for lack of subject matter jurisdiction. The subject complaint seeks to have Bowery and the other defendants found liable for Chargit's failure to remit the proceeds of Visa and Mastercard credit card transactions to the Plaintiffs, and to the class of merchants that the Plaintiffs seek to represent.[1] The Plaintiffs' primary jurisdictional contention is that if they recover from the defendants in this action it will result in a concomitant reduction of unsecured creditors' claims against the Debtor's estate, thereby freeing up assets of that estate for distribution to the remaining unsecured creditors. The Debtor is not a party to the adversary proceeding.

The basis for Defendant's motion to dismiss is that the underlying adversary proceeding is outside of the limited jurisdiction conferred upon this Court under the 1984 amendments to the Code. Simply stated, Bowery alleges that there are no assets in the Debtor's estate available for distribution to unsecured creditors and therefore a decision in this action will have no impact upon the estate. Bowery further contends that even if the Plaintiffs did prevail on the merits in this action, Bowery would be subrogated to the Plaintiffs' claims against

Chargit, pursuant to both an express indemnification agreement and settled legal principles. The result would then merely be a shifting of liability from one creditor (i.e. the Plaintiffs) to another (i.e. the defendants) without having any impact upon the estate. Accordingly, Bowery concludes that this is neither a core, nor a non-core related to proceeding within the scope of this Court's jurisdiction as embodied in 28 U.S.C. §§ 1334, 157 and the standing order of reference for this District.

## BACKGROUND

The Debtor was engaged in the business of processing credit card slips for merchants. Bowery served as a "window" for the clearing of these transactions, providing access to Visa and Mastercard through the Bowery's membership in those two systems. Plaintiffs are creditors of the Debtor because the Debtor allegedly wrongfully failed to process, honor and remit to them the proceeds of the Visa and Mastercard charge slips which the Debtor handled. Most of the Plaintiffs were members of the official creditors' committee, which was represented by the same law firm which appears for them in the instant matter. It is alleged that if this proceeding was certified as a class action, Plaintiffs would represent approximately 85% of the Debtor's unsecured debt.

On April 10, 1987, the Debtor's chapter 11 case was converted to a case under chapter 7, and Dorothy Eisenberg was appointed trustee ("Trustee"). As the estate's principal fiduciary, she has liquidated all the physical assets of the Debtor, realizing $513,615.71. Eisenberg Affidavit ("Aff.") at para. 4.[2] In addition she has liquidated bank accounts and accounts receivable, yielding a total of $361,701.04. *Id.* at para. 5. She states that after satisfying the first priority secured debt, there

---

**1.** Plaintiffs seek, *inter alia,* class action certification pursuant to Fed.R.Civ.P. 23 as made applicable by Fed.R.Bankr.P. 7023.

**2.** In relying on Trustee Eisenberg's Affidavit this Court is mindful of the responsibilities which accompany her mandate. *See e.g. In re Power,* 115 F.2d 69, 72 (7th Cir.1940), ("A trustee in bankruptcy stands in a different relation to the

court from that of a mere creditor. He is an officer of the court, as well as the owner of an interest. It is his duty to collect the assets and he is responsible for failure to do so. He may be charged with the value of assets which never came into his possession, if he fails in his duty to get them into his possession.").

remains a balance of $489,337.01 in the estate account. *Id.* at para. 6. *Approximately $9 million of secured debt needs to be satisfied before there can be any distribution to general unsecured creditors. Id.* at para. 7. In what amounts to an understatement, she has concluded that it is unlikely that there will be any distribution to general unsecured creditors at the end of the administration of this case. *Id.* at para. 8.

Plaintiffs however challenge the Trustee's assessment of the liquidation value of this Debtor's estate, and argue that it is too early to conclude that there is no likelihood of a distribution to unsecured creditors. In support of this argument Plaintiffs' assert:

1) Debtor's chapter 11 schedules reflect:

a) assets worth almost $12 million, and accounts receivable, exclusive of bad debt reserve, of over $3.5 million.

b) assets of undetermined value, including real property leases, and miscellaneous licenses and insurance policies.

c) several pending lawsuits having a value of almost $800,000.

2) A pending lawsuit by a secured creditor with a $5 million secured claim against former officers and accountants which, if successful, would reduce the secured claim against the Debtor's estate proportionately.

3) On May 7, 1987 computer files containing listings of approximately $18 million of checks purchased by NCRC, Chargit's subsidiary, were turned over to the Trustee. These allegedly represent a potential asset for the Trustee to liquidate.

4) There is a possibility that the claims of Chargit's secured creditors will be challenged and invalidated.

5) That, based on the Trustee's July 31, 1987 one paragraph interim report, the administration of the estate is not yet complete, and therefore it is premature to conclude that there will be no distribution to unsecured creditors.

This Court concludes that the values and prospective recoveries ascribed to the aforesaid enumeration by Plaintiffs represent nothing more than a speculative indulgence. In the main, the values were largely discredited and discounted by the time the reorganization efforts aborted with a conversion to liquidation under chapter 7 of the Code. The Plaintiffs' allegations of value are discussed below seriatim.

1) Plaintiff's reliance on the Debtor's chapter 11 schedules is ill-founded. Thus notwithstanding the debtor's early rosy view, according to the Trustee's subsequently filed affidavit, the bulk of the Debtor's assets (consisting of physical assets, bank accounts and various accounts receivable) have already been liquidated, yielding only $875,000. *Id.* at para. 4–5. The total liquidation value of the Debtor is estimated at only $1 million. *Id.* at para. 8.

2) There is nothing in the record to establish the viability or impact upon the estate of the secured creditor's lawsuit, or that if there were to be a favorable judgment, the likelihood that the officer defendants would have the means to satisfy any corresponding multi-million dollar judgment.

3) Plaintiffs' assessment of the value of the NCRC uncollected checks, is similarly unrealistically inflated. *See* Currier Aff. at para. 4–5. The Trustee did not even factor the value of these uncollected checks into her calculation of the value of this estate. *See* Eisenberg Aff.

In addition, it also appears that plaintiffs' counsel, as counsel to the chapter 11 creditors' committee, previously was of a similar view as to the limited value of these receivables. *See* March 10, 1987 transcript at 52–53, annexed to the Comet reply affidavit, (Mr. Olick: "There is no evidence as to the present value of these receivables that are sought to be collected. They are old receivables.... They have been outstanding for a long period of time. The cream of these receivables from NCRC have already been collected. It is going to be difficult to collect the balance...."). Indeed, Mr. Olick filed an objection to the retention of special litigation counsel to pursue collection of these checks because, *inter alia,* "[t]he institution of further or

additional litigation on behalf of the debtors as proposed by the instant application is of dubious benefit to these debtors' estates." *See* Creditors' Committee Objection to Retention of Special Litigation Counsel.

4) Also equally remote is the possibility that the secured creditors' claims will be deemed invalid. The Trustee has indicated no intent or basis to challenge these claims. In addition, the presumption of their validity is bolstered by the fact that plaintiffs' counsel, as committee counsel, never questioned those claims nor suggested a justification for doing so.

5) To the extent that there are any questions as to statements contained in the Trustee's interim report, the Trustee's subsequently filed affidavit serves to clarify them.

Accordingly, since the Debtor's secured creditors will inevitably exhaust the Debtor's limited assets, it is clear that there will be no estate assets available to pay Plaintiffs or any of this estate's unsecured creditors.

## DISCUSSION

Bankruptcy Court jurisdiction is defined by the interrelationship between and among a number of statutory sections. 28 U.S.C. § 1334 vests District Courts with jurisdiction of all cases under title 11 as well as jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11. 28 U.S.C. § 157(a) provides that District Courts may refer this jurisdiction to the Bankruptcy Court. The July 10, 1984 standing order of District Judge Robert J. Ward provides for that referral in this district.

28 U.S.C. § 157(b) provides that a Bankruptcy Judge may hear and determine all core proceedings arising under title 11, or arising in a case under title 11. 28 U.S.C. § 157(c)(1) provides that as to all non-core but otherwise related to matters the Bankruptcy Judge shall submit proposed findings of fact and conclusions of law to the District Court. Accordingly, a Bankruptcy Judge's jurisdiction only extends over these two categories of matters.[3]

28 U.S.C. § 157(b)(2)(A)–(O) provides a non-exclusive list of core proceedings. The instant suit however does not come within any of the listed categories as it raises no primary issues such as dischargability, discharge, claims allowance, estate administration, and the like, with any degree of vitality. Where there is no sharply defined § 157(b)(2)(A)–(O) compartment, a matter may nonetheless qualify as a core matter, and that determination will then be fact driven with each proceeding decided somewhat elastically. As this Court previously noted:

> [I]t is necessary to apply § 157(b)(2) in light of the Supreme Court's holding in *Northern Pipeline Construction Co. v. Marathon Pipe Line Company*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).... The holding in *Northern Pipeline*, and § 157(b)(3) mandate that we do not apply § 157(b)(2) literally and broadly, but that the outer limits of that section be determined by the Bankruptcy Courts. [Citations omitted].

*Official Creditors' Committee of Honeycomb, Inc. v. Fidelity Bank, N.A. (In re Honeycomb, Inc.)*, 72 B.R. 371, 373 (Bankr. S.D.N.Y.1987).

■ As noted above, due to this Court's limited jurisdiction, it may only hear and determine core proceedings "arising under title 11" or "arising in a case under title 11." 28 U.S.C. § 157(b)(1). In order for a case or proceeding to "arise under title 11,"

---

**3.** This jurisdictional scheme resulted from the United States Supreme Court's decision in *Northern Pipeline Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *Marathon* held that the prior jurisdictional grant accorded Bankruptcy Courts pursuant to 28 U.S.C. § 1471(c), extended over proceedings which were too far removed from the traditional "core" bankruptcy powers to allow them to be adjudicated by non-article III Courts. *See Wood v. Wood (In re Wood),* 825 F.2d 90, 92–93 (5th Cir.1987). As a result Congress created this bifurcated jurisdictional scheme of core and non-core related to proceedings.

the claims asserted must be predicated on a right created by a provision of title 11. *National City Bank v. Coopers & Lybrand*, 802 F.2d 990, 993–94 (8th Cir.1986); *Carlton v. BAWW, Inc.*, 751 F.2d 781, 787 n. 7 (5th Cir.1985) (both quoting H.R.Rep. No. 595, 95th Cong., 2d Sess. 445–46, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 6401).

On the other hand "arising in" "seems to be a reference to those 'administrative matters' that arise *only* in bankruptcy cases [ (footnote omitted) ]. In other words, 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *In re Wood*, 825 F.2d at 97 (5th Cir.1987).

■ Applying these standards, this third-party litigation among certain creditor parties and a bank, does not support any finding of "core" status sufficient to accord this Court jurisdiction to hear and determine this matter. The instant complaint relates solely to activities which took place prior to the commencement of the debtor's chapter 11 case; and it raises only state law claims between non-debtor third-parties which do not arise under title 11 or arise in the debtor's title 11 case. Accordingly the instant complaint does not qualify as a core proceeding arising under title 11, or arising in a case under title 11.

A Bankruptcy Court may also hear non-core related to proceedings. However, unless the parties consent to the Bankruptcy Court determining the matter, that Court must submit proposed findings of fact and conclusions of law to the District Court for entry of a final judgment or order. 28 U.S.C. § 157(c)(1); *Interconnect Telephone Services, Inc. v. Farren (In re Interconnect Telephone Services, Inc.)*, 59 B.R. 397, 399 (S.D.N.Y.1986).

■ A widely accepted standard for determining whether a matter qualifies as a non-core related to proceeding is: "whether the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *In re Wood*, 825 F.2d at 93 (emphasis in original) [4]; *see also Beebe International, Inc. v. French American Banking Corp. (In re Wedtech Corp.)*, 72 B.R. 313, 315–16 (Bankr.S.D.N.Y.1987). The fact that the Debtor is not a party to the proceeding does not, in and of itself, preclude the proceeding from qualifying as one which is "related to." *In re Pacor Inc.*, 743 F.2d at 994. However, given the facts of this case, the argument that this third-party action at the very least is a "related to" proceeding, which potentially would lead to a distribution to unsecured creditors, is so speculative and insubstantial that it enjoys no credence.

"Conceivable" is the operative word in the above recited standard to determine whether a proceeding qualifies as "related to." Although the optimist may argue that anything is "conceivable," any practical definition of this term of art must be tempered by a measure of reasonableness. That measure is absent in the Plaintiffs' assessment.[5]

■ It is the burden of the party alleging Bankruptcy Court jurisdiction to establish the existence of that Court's jurisdiction over the matter in dispute. *See State*

---

4. citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) (emphasis added); *accord In re Dogpatch U.S.A., Inc.*, 810 F.2d 782, 786 (8th Cir.1987); *In re Salem Mortgage Co.*, 783 F.2d 626, 634 (6th Cir.1986); *In re Globe Parcel Service*, 71 B.R. 323, 326 (E.D.Pa.1987); *In re World Financial Services Center, Inc.*, 64 B.R. 980, 988 (Bankr.S.D.Cal.1986); *In re Cemetery Development Corp.*, 59 B.R. 115, 121 (Bankr.M.D.La. 1986).

5. Indeed Plaintiffs' broad definition of "conceivable" would accord that term an unworkable definitional range, spanning from one being able to conceive of the child prodigy Mozart at age five having the potential to be a renown musical genius, to the more dubious potential of the proverbial roomful of monkeys and typewriters, over an infinite time period, reproducing Shakespeare's Hamlet. The former is reasonably conceivable, the latter, although theoretically "conceivable", is also jurisprudentially *un*reasonable.

*ex rel. Roberts v. Mushroom King, Inc.*, 77 B.R. 813, 816, 820 (D.Or.1987); *see generally Lehigh Valley Indus. v. Birenbaum*, 527 F.2d 87, 92 (2d Cir.1975).

Plaintiffs have failed to meet this burden. The record placed before the Court for determination of this motion when viewed in a light most favorable to Plaintiffs, does not show that the outcome of the suit will have an impact on the administration of the case so as to confer jurisdiction upon this Court. The Plaintiffs have shown no real jurisdictional hold on the slim coat-tails of this bankruptcy case to bring them within the "otherwise related to a case under title 11" jurisdictional prong.[6] *See Official Creditors Comm. v. Fidelity Bank (In re Honeycomb, Inc.)*, 72 B.R. at 374 (bankruptcy court jurisdiction does not exist "where purely unrelated state law claims are asserted against parties uninvolved in the bankruptcy case and who do not derive any rights from the bankruptcy proceeding."). Instead this is a plain dispute between non-bankruptcy parties, ex involvement of the estate or its trustee, involving non-title 11 matters solely initiated for Plaintiff's benefit. *See Turner v. Ermiger (In re Turner)*, 724 F.2d 338 (2d Cir.1983) (Determined under former 28 U.S. C. § 1471).

There being no subject matter jurisdiction, the motion to dismiss is granted.

It is SO ORDERED.

---

**6.** It bears noting that in light of the fact that the prospect of a return to unsecured creditors is "reasonably" *in* conceivable, this Court need not address the issue, noted in the first segment of this decision, of Bowery's right to assert a preemptive claim for indemnification, although the possibility of that right existing is *not* remote.