In re CITY WIDE PRESS, INC., Debtor.

GRANT PAPER COMPANY, Plaintiff,

v.

COMMUNICRAFT, INC., Defendant.

Bankruptcy Nos. 88–13361S, 88–13595F.[1]
Adv. No. 89–0750S.

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 17, 1989.

Neal D. Colton, Mark A. Shaiken, Philadelphia, Pa., for plaintiff-Grant Paper Co.

Michael A. Temin, Philadelphia, Pa., for trustee.

James J. O'Connell, Asst. U.S. Trustee, Philadelphia, Pa., U.S. Trustee.

John Brucker, Philadelphia, Pa., Interim Trustee–Bankr. No. 88–13361S.

James W. Adelman, Philadelphia, Pa., for Creditors' Committee.

Gary M. Perkiss, Philadelphia, Pa., for defendant-Communicraft, Inc.

Edward C. Toole, Jr., Mary F. Walrath, Philadelphia, Pa., for defendant-Communicraft, Inc.

Albert A. Ciardi, Jr., Aris J. Karalis, Philadelphia, Pa., for debtor-City Wide Press, Inc.

Rosetta B. Packer, Philadelphia, Pa., for Fidelity Bank.

## MEMORANDUM

DAVID A. SCHOLL, Bankruptcy Judge.

The early stages of the factual background of the instant dispute are set forth in our Opinion of July 21, 1989, in the main bankruptcy case, now in Chapter 7, underlying the present proceeding, reported at 102 B.R. 431, 431–34, 439 (Bankr.E.D.Pa. 1989) (hereinafter cited as *"City Wide I"*). In that decision, we determined that the relationship between the Debtor, City Wide Press, Inc. (hereinafter "the Debtor"), and the Defendant in this proceeding, Communicraft, Inc. (hereinafter "CC"), dictated that CC would be accorded a super-priority lien as to only its claims in the amount of $464,201.75 arising from management of the Debtor's business prior to January 10, 1989, and would be relegated to the status of an administrative claimant as to its claims arising thereafter.

On August 15, 1989, the Plaintiff herein, Grant Paper Co. (hereinafter "Grant"), filed the instant adversary Complaint against CC demanding payment of $210,-864.68 for paper allegedly purchased by but unpaid for by CC, "some or all" of which was allegedly utilized by CC in its operation of the Debtor's business. Grant contended that this matter was not only within this court's jurisdiction under 28 U.S.C. § 1334, but also argued that it was

---

1. We note that the parties have utilized the main bankruptcy case number of the Debtor's voluntary bankruptcy case filed subsequent to the involuntary case with which it was consolidated in the caption of this proceeding. In order to permit the docketing of this proceeding in all conceivable proper places, we have affixed the numbers of both bankruptcy cases to the caption.

a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(A), (O), and/or (E).

On October 19, 1989, CC filed a Motion to Dismiss this proceeding, contending that the matter was not "related to" the Debtor's bankruptcy case and that consequently this court lacked jurisdiction to hear it pursuant to 28 U.S.C. § 1334(b). Upon receipt of same, we entered an Order of October 23, 1989, (1) directing Grant to file any answer or brief opposing this motion; (2) directing the Trustee to file a statement of his position on the matter; and (3) allowing any other interested party to address the motion, all on or before November 3, 1989. Unfortunately, the Trustee was delayed in obtaining copies of the pleadings, not having been served therewith, and his remittance was not produced until November 10, 1989. We were inclined to wait for same, because his statement, indicating that his proceeding is unlikely to affect administration of the Debtor's estate and that the motion to dismiss should therefore be granted, is crucial to our decision to grant the dismissal motion.

Obviously, the Debtor is not a party to this litigation. While this fact does not preclude the qualification of this proceeding as "related to" the Debtor's bankruptcy, it places a significant burden upon Grant to establish the existence of this court's jurisdiction over this matter. *See In re Chargit, Inc.,* 81 B.R. 243, 247 (Bankr.S.D.N.Y.1987) (per LIFLAND, J.).

Speaking of the limits of "related to" jurisdiction of bankruptcy courts, the Third Circuit Court of Appeals has twice stated that

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy....* An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*In re Bobroff,* 766 F.2d 797, 802 (3d Cir. 1985); and *In re Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984). We note that, although both *Bobroff* and *Pacor* relate a seemingly very broad test for determining whether a matter is "related to" a bankruptcy case, the Court of Appeals concluded, in both of those cases, that "related to" jurisdiction was absent.

■ In its Brief, Grant begins by asserting that CC's former counsel had assured its counsel that this court was the proper forum in which to litigate any dispute between the parties. It needs little extensive discussion to observe that, even if such an agreement was made with Grant's counsel by CC's former counsel, it would not bind us to accept jurisdiction of this matter, as jurisdiction cannot be conferred upon this court by the mere agreement of the parties. *See In re Almarc Mfg. Co.,* 94 B.R. 361, 365 (Bankr.E.D.Pa.1988).

Next, Grant argues that this matter is core in nature on the basis of former Chief Judge Goldhaber's decision in *In re Franklin Computer Corp.,* 60 B.R. 795, 802–03 (Bankr.E.D.Pa.1986). In that case, Judge Goldhaber held that a proceeding in which the Chapter 11 debtor sought a declaration of its rights under a settlement agreement with a creditor that had been approved by the bankruptcy court and which served as the basis of the Debtor's confirmed plan, *id.* at 797–98, was a core proceeding under § 157(b)(2)(A) (it was the basis of the plan and hence was very significant to the administration of the debtor's estate); § 157(b)(2)(C) (it was in substance a counterclaim to a proof of claim filed by the creditor); and § 157(b)(2)(M) (it involved the debtor's right to use certain property patented by the defendant). *Id.* at 802–03.

■ Grant seeks to draw an analogy between this proceeding and *Franklin Computer* because CC's relationship with the Debtor was established pursuant to a Stipulation approved by this court. *See City Wide I,* 102 B.R. at 432–33. This is a very tenuous assertion of a similarity between the two. The mere tracing of CC's rights to an agreement of this court is clearly insufficient in itself to establish "related

to" jurisdiction. *Cf. In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987). Unlike the *Franklin Computer* matter, the Debtor is not a party to the instant proceeding. Since the Debtor is now in Chapter 7, there will be no reorganization, let alone one in which Grant's relationship with CC plays a part. Our review of the claims docket reveals that Grant has not even filed a proof of claim in the Debtor's case, and thus there can be no counterclaim or other relationship to any proof of claim filed by it. There is no issue here concerning the Debtor's use of any property. There is, hence, no basis to support the conclusion that this is a core proceeding under §§ 157(b)(2)(C) and (M). The invocation of § 157(b)(2)(A) in this context presupposes a much broader reading of that statutory subsection than appears constitutionally warranted. *See, e.g., In re Meyertech Corp.*, 831 F.2d 410, 416–18 (3d Cir.1987); and *In re Windsor Communications Group, Inc.*, 67 B.R. 692, 695 (Bankr.E.D.Pa.1986). Hence, we conclude, with little hesitation, that the instant matter is not a core proceeding.

Finally, Grant argues that, even if this matter is not a core proceeding, this court has "related to" jurisdiction over the matter as a non-core proceeding. *See, e.g., In re Reed*, 94 B.R. 48, 51 (Bankr.E.D.Pa. 1988); and *In re A.I.A. Industries, Inc.*, 75 B.R. 1013, 1019 (Bankr.E.D.Pa.1987). The principal authority relied upon by Grant in making this argument, in addition to the broad language of *Bobroff, supra;* and *Pacor, supra,* is *In re Wedtech Corp.*, 72 B.R. 313 (Bankr.S.D.N.Y.1987).

*Wedtech* involved the removal, to bankruptcy court, of a federal district court action[2] in which a manufacturer of goods supplied to the debtor had sued a bank which had issued a letter of credit to the debtor. The court determined that the matter was related to the debtor's bankruptcy because the outcome of the proceeding "appears to affect directly the resolution and ranking of claims" in the debtor's bankruptcy case. *Id.* at 316.

Of the arguments raised by Grant here, this is the most thought-provoking. It is true that litigation involving parties none of which are the debtor itself may be heard by a bankruptcy court within its "related to" jurisdiction. *See, e.g., Xonics, supra,* 813 F.2d at 132; and *In re Dogpatch U.S.A., Inc.*, 810 F.2d 782, 786 (8th Cir. 1987). We find plausible Grant's argument that the outcome of its litigation against CC could affect the magnitude of CC's super-priority and administrative claims against the Debtor and thus affect the administration of its estate.[3]

It was this potential impact of this proceeding upon the Debtor's estate which, in our view, rendered the Trustee's position in this matter so critical. As a party apparently totally disinterested in this proceeding but having the highest degree of a fiduciary obligation to the Debtor's estate, we believed that the Trustee, represented by highly-perceptive counsel, would serve as an accurate weathervane as to whether this proceeding would, in some real sense, have any effect upon the administration of the Debtor's estate. As it developed, the Trustee expressed the view that this matter is too remote from the administration of the Debtor's estate to warrant the exercise of "related to" jurisdiction. The Trustee stated that "[i]f this court were to become involved in all disputes between Communicraft and its creditors, it would, in effect, be supervising the 'estate' of Communicraft without that company being the sub-

---

**2.** We should observe that we have some doubt as to whether an action in the district court of which a particular bankruptcy·court is a unit can be removed to that bankruptcy court. *See In re New York City Shoes, Inc., New York City Shoes, Inc. v. First National Bank of Boston*, Bankr. No. 87–03426S, Adv. No. 89–0640S, slip op. at 5, 1989 WL 112792 (Bankr.E.D.Pa. Sept. 25, 1989); *Thomas Steel Corp. v. Bethlehem Rebar Industries, Inc.*, 101 B.R. 16 (Bankr.N.D.Ill.

1989); and *Helena Chemical Co. v. Manley*, 47 B.R. 72, 74–75 (Bankr.N.D.Miss.1985).

**3.** Our analysis of Grant's claim, by review of the invoices attached to the Complaint, reveals that most of the claims arose after January 10, 1989 (about $126,500 of the claims totalling almost $211,000), and hence would potentially impact upon CC's administrative claim, with the balance potentially impacting on its super-priority claim.

**72**

ject of a bankruptcy case." Statement of Trustee with Respect to Jurisdiction, at 3.

In light of this statement from the Trustee noting only a slight relationship between the administration of the estate and this litigation, we are not inclined to exercise "related to" jurisdiction here. We recognize that the amount of a claim made by a creditor against a priority or administrative claimant of the Debtor could conceivably affect the amount of the claim of that priority or administrative claimant against the Debtor. Therefore, Grant's claim against CC could conceivably affect the administration of the Debtor's estate in at least slight fashion. However, as Judge Lifland indicates in *Chargit, supra,* in this context "conceivably" is a "term of art" which "must be tempered by a measure of reasonableness." 81 B.R. at 247.

In our view, it is not reasonable to conclude that the outcome of the claim of Grant against CC will have an impact of sufficient degree upon the Debtor's estate to term the outcome of this claim "related to" the administration of the Debtor's estate. *Compare In re Fietz,* 852 F.2d 455, 458 (9th Cir.1988) (claim of debtor's non-debtor ex-wife against mortgagee of jointly-owned realty held to have an insufficiently reasonable prospect of enlarging the debtor's bankruptcy estate to justify "related to" jurisdiction); *Bobroff, supra,* 766 F.2d at 803 (post-petition claims of the Chapter 7 debtor for malicious prosecution, defamation, and interference with his contractual relations did not involve property of his estate and hence "related to" jurisdiction was absent); *In re P.D.S. Development Corp.,* 103 B.R. 93, 94–95 (Bankr.S.D. N.Y.1989) (per SCHWARTZBERG, J.) (action by the debtor's receiver who had erroneously paid the debtor's utility bill against the utility to recover same held not sufficiently "related to" the debtor's bankruptcy case because it involved, in substance, a mere substitution of one administrative creditor for another); and *Chargit, supra* (action by creditors of the debtor against a bank, alleging that the bank's failure to make remittances of proceeds of transactions with the debtor to the creditors, was not sufficiently "related to" the debtor's

bankruptcy case to give rise to jurisdiction even though the outcome could, if successful, reduce the creditors' claims against the debtor). We agree with the Trustee that the scope of "related to" jurisdiction cannot logically be extended to include every dispute between administrative and priority creditors of a debtor with *their* creditors. Therefore, we conclude that "related to" jurisdiction is absent here.

Accordingly, we will enter an Order granting CC's motion to dismiss this proceeding.