**In re BURGER BOYS, INC., d/b/a Burger Boys of Brooklyn, Debtor.**

**BURGER BOYS, INC., d/b/a Burger Boys of Brooklyn, Plaintiff–Appellant,**

v.

**SOUTH STREET SEAPORT LIMITED PARTNERSHIP, Defendant–Appellee.**

**No. 94 CV 7136 (BDP).**

United States District Court, S.D. New York.

Dec. 15, 1994.

---

Lawrence R. Reich, White Plains, NY, for plaintiff-appellant.

Clifford M. Solomon, Corwin, Solomon & Tanenbaum, P.C., New York City, for defendant-appellee.

## MEMORANDUM DECISION

PARKER, District Judge.

The Debtor, Burger Boys, Inc. ("Burger Boys"), appeals an Order of the Bankruptcy Court, dated June 21, 1994, abstaining under 28 U.S.C. § 1334(c) from adjudicating an ad-

versary proceeding and granting relief from an automatic stay under 11 U.S.C. § 362(d). At a hearing on June 21, 1994, the Bankruptcy Court considered motions (1) to abstain, (2) to grant relief from the automatic stay, and (3) to extend the time to assume or reject a lease between Burger Boys and its landlord, the Appellee, South Street Seaport Limited Partnership ("South Street Seaport"). The Bankruptcy Court conditionally granted the motions to abstain and to grant relief from the automatic stay, but stayed its Order pending this appeal. Following an apparent dispute among the parties, on August 15, 1994, the Bankruptcy Court issued a subsequent identical order granting relief from the automatic stay. The Court reiterated that the order was stayed pending this appeal. For the reasons stated, the Bankruptcy Court's Order is affirmed in all respects.

Burger Boys operates a store in the Market Building located at South Street Seaport in New York City. South Street Seaport is the Burger Boys' landlord. On May 17, 1983, the parties entered the lease for the Market Building premises. The lease expires December 31, 2004. On October 11, 1993, South Street Seaport commenced a non-payment summary proceeding in the Civil Court of the City of New York ("the Summary Proceeding") to evict Burger Boys. In response, Burger Boys asserted six counterclaims for damages alleging, in essence, that the South Street Seaport has "abandoned" the Market Building for a new building in the area, in breach of the terms of the lease. South Street Seaport raised an affirmative defense that the assertion of counterclaims was barred by the terms of the lease. On the eve of trial, Burger Boys filed a

Chapter 11 petition, thereby automatically staying the Summary Proceeding. See 11 U.S.C. § 362. On May 2, 1994, Burger Boys filed an adversary proceeding in the Bankruptcy Court ("the Adversary Proceeding") asserting the same six claims contained in its counterclaims in the Summary Proceeding.

On June 21, 1994 South Street Seaport moved for abstention from the Adversary Proceeding under 28 U.S.C. § 1334(c)(2). The Bankruptcy Court granted the motion on the condition that South Street Seaport withdraw its affirmative defense to the counterclaims in the Summary Proceeding and consent to the transfer of the counterclaims to State Supreme Court where more extensive discovery is permitted. The Bankruptcy Court held that the Adversary Proceeding was "noncore", and that mandatory abstention was required because each of the six factors listed in § 1334(c)(2) was present.

The Bankruptcy Court also granted South Street Seaport's motion for relief from the automatic stay in the event that Burger Boys failed to assume or reject the lease within sixty days. The Court, however, stayed that Order pending the determination of this appeal, upon the condition that Burger Boys continue to pay rent in accordance with the terms of the lease.

On this appeal, Burger Boys claims that mandatory abstention was not required because the Adversary Proceeding is a "core" proceeding under § 1334(c)(2), and that granting relief from the automatic stay of South Street Seaport's Summary Proceeding was improper because the Bankruptcy Court erred in its balancing of the hardships. We find these contentions unpersuasive.[1]

---

1. The Appellee argues that this appeal from the Bankruptcy Court's Order granting relief from the automatic stay should be dismissed as moot. The Appellee asserts that the Appellant violated a condition of the stay pending appeal by failing to make timely rent payments, and thus the stay pending appeal never took effect. Because the Appellant did not assume the lease in sixty days, according to the Appellee the lease should be presumed rejected as a matter of law. We decline to dismiss the appeal as moot because we find that the issue is not properly before us.

There is no evidence in the record, except disputed allegations in the appellate briefs, of the

nonpayment of rent nor its untimeliness. The Appellee has failed to cite any cases supporting its contention that untimeliness in rent payments should be considered a condition of the stay pending appeal, violation of which would render the stay ineffective. The Appellee cites only cases in which the Appellants failed to obtain a stay pending appeal. In the interim, the assets at issue were sold. The courts held that the appeals from the orders of the bankruptcy courts were moot because the district courts were unable to grant effective relief without unraveling the consummated sales. Because the Appellee in this case has presented no evidence that this Court would be unable to fashion relief (i.e.,

### A. *Mandatory Abstention under 28 U.S.C. § 1334*

■ Under 28 U.S.C. § 1334(c)(2), a bankruptcy court must abstain from a noncore proceeding—a proceeding that is "related to" a case under title 11, but does not itself "arise under" title 11 or "arise in" a case under title 11.[2] In contrast, a proceeding that "arises under" title 11 or "arises in" a case under title 11 is a "core proceeding." A core proceeding is generally defined as a matter which would have no existence outside of the bankruptcy case. See, e.g., *In re Kolinsky*, 100 B.R. 695, 701 (Bankr.S.D.N.Y. 1989). The core/noncore determination is an issue of law that is reviewed *de novo* by this Court. See *Ben Cooper, Inc. v. The Insurance Company of the State of Pennsylvania, et al.*, 896 F.2d 1394, 1397 (2d Cir.1990).

■ Burger Boys contends that its Adversary Proceeding is a core proceeding under 28 U.S.C. § 1334(c)(2), and thus mandatory abstention is inappropriate, for two reasons: First, the lease is "property of the estate" under 11 U.S.C. § 541(a)(1), and second, its Adversary Proceeding is premised on both pre- and post-petition wrongful acts by South Street Seaport. With regard to its first ground, Burger Boys claims that because its Adversary Proceeding is related to "property of the estate" and "the relief sought ... is coupled in a material way with the reorgani-

zation of Burger Boys and its ability to propose and confirm a Chapter 11 plan and to adjust its debtor-creditor relationships", the Adversary Proceeding is a core proceeding.

*Northern Pipeline Construction Co. v. Marathon Pipe Line Company*,[3] 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) compels a different result. In *Marathon*, the Supreme Court, without a majority opinion, declared the Bankruptcy Act of 1978 unconstitutional because it permitted Bankruptcy Courts to adjudicate state law claims unrelated to federal law.[4] In 1984, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333, 28 U.S.C. § 151, to reconstitute the bankruptcy courts and address the constitutional defects identified in *Marathon*. The new law, echoing the language of the plurality opinion, drew a distinction between "core" proceedings in which a bankruptcy court may enter final judgments and orders and "noncore" proceedings in which a bankruptcy court may merely make proposed findings of fact and conclusions of law if there is an independent basis for federal jurisdiction. As predicted by the dissent in *Marathon*, the core/noncore distinction has proven elusive. Within the wake of *Marathon*, courts have been sure of nothing save that the particular fact situation in *Marathon*—a pre-petition, state law breach of contract action—definitely constituted a noncore proceeding.[5]

---

evidence that the lease had been sold), the mootness doctrine appears inapplicable. Cf. *Frito-Lay, Inc. v. LTV Steel Co., Inc.*, 10 F.3d 944 (2d Cir.1993).

**2.** Other factors are relevant to a Bankruptcy Court's decision to abstain. The Appellant does not dispute, however, that (1) a timely motion for abstention was made by the Appellee, (2) its adversary proceeding is based upon a state law cause of action, (3) its adversary proceeding could not have been commenced in a Court of the United States absent jurisdiction under title 11, (4) an action is pending in a state court of appropriate jurisdiction, and (5) the pending state action may be timely adjudicated.

**3.** In *Marathon*, the debtor/appellant, after filing a petition for bankruptcy, filed an adversary proceeding in the bankruptcy court against the appellee seeking damages for alleged breaches of contract and warranty. The appellee sought dismissal of the suit on the ground that the 1978 Act unconstitutionally conferred Article III judicial

power upon judges who lacked life tenure and protection against salary diminution.

**4.** For the plurality, Justice Brennan wrote: "[T]he restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case." 458 U.S. at 71, 102 S.Ct. at 2871.

**5.** See *In re Orion Pictures Corp.*, 4 F.3d 1095, 1102 (2d Cir.1993) (listing cases that define prepetition contract actions as noncore because to do otherwise would "wipe out the underpinnings of Marathon") (citations omitted). See also *Allied Mechanical and Plumbing Corp. v. Dynamic Hostels Housing Development Fund Co., Inc.*, 62 B.R. 873, 877 (S.D.N.Y.1986) ("where the issues raised in the adversary proceeding involve a state law breach of contract dispute which would not have been commenced in the bankruptcy court but for the bankruptcy filing, the adversary proceeding should be regarded as a 'related to' case

The Second Circuit has recently rejected Burger Boys' view that an adversary proceeding related to "property of the estate" is core if the proceeds would inure to the benefit of the estate. In *In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir.1993), a case involving a pre-petition, state law breach of contract proceeding, the Court below had concluded that because the claim of $77 million, if collected, would inure to the benefit of the estate, it concerned the administration of the estate, and thus was a core proceeding. The Second Circuit reversed:

> The problem with [that] approach is that it creates an exception to *Marathon* that would swallow the rule. Any contract action that the debtor would pursue against a defendant presumably would be expected to inure to the benefit of the debtor estate and thus 'concern' its 'administration.' Certainly this is true here where the outcome could determine [the debtor's] continued viability as an enterprise. Nonetheless, the Adversary Proceeding remains a pre-petition contract action that the Supreme Court held in *Marathon* may not be adjudged by a non-Article III judge.

4 F.3d at 1102.

Moreover, where, as here, the "property of the estate" (the breach proceeds and Burger Boys' rights under the lease) is conditional upon the debtor prevailing in the adversary proceeding, courts have consistently held the adversary proceeding is noncore. See, e.g., *In re J.T. Moran Financial Corp.*, 124 B.R. 931, 938 (S.D.N.Y.1991) ("if the amount in question can be characterized as property of the estate only if the debtor prevails and not property of the estate if the defendants succeed ..., there is no unconditional property of the estate subject to a turnover proceeding for core jurisdiction unless the debtor ultimately prevails in the action on the contract"). See also *Acolyte Electric Corporation v. City of New York*, 69 B.R. 155, 172 (E.D.N.Y.1986); *In re Thomson McKinnon Securities, Inc.*, 161 B.R. 98, 101 (Bankr. S.D.N.Y.1993).

which does not 'arise under' title 11 or 'arise in' a case under title 11"); *Pierce v. Airport Development Corporation*, 44 B.R. 601, 602 (D.Colorado 1984) (finding "no relevant difference ... be-

Burger Boys supports its position by analogy to *In re Celotex Corporation*, 152 B.R. 667 (Bankr.M.D.Fla.1993), and *Plaza at Latham Associates v. Citicorp North America, Inc.*, 150 B.R. 507 (N.D.N.Y.1993). Both cases involved adversary proceedings for a determination of rights under insurance policies, the proceeds of which were to pay the claims of creditors.

In *Celotex* and *Plaza*, however, the determination of core was supported by a particular nexus between the adversary proceeding and the reorganization plan. In each case, the insurance policies at issue were purchased by the debtor to indemnify itself against the parties involved in the reorganization plan. That nexus is absent here. Burger Boys claims that the proceeds from the Adversary Proceeding will be distributed among its creditors, but the contract in dispute, the lease agreement, unlike the insurance policies in *Celotex* and *Plaza*, was not executed by Burger Boys to indemnify itself against its creditors in bankruptcy.

■ Burger Boys' second argument—that its Adversary Proceeding is core because it is premised on both pre- and post-petition wrongful acts by South Street Seaport—asserts that this *continuing* damage to the "property of the estate" requires a core determination.

To be sure, numerous courts have held that post-petition contract disputes with a debtor are core proceedings because they necessarily arise in cases under title 11 and concern the administration of the estate. See *Kenston Management Co., Inc. v. Lisa Realty Co.*, 137 B.R. 100, 105–106 (E.D.N.Y. 1992) (listing cases in which courts have held that post-petition contract disputes are core proceedings). On the strength of this authority, Burger Boys argues that because its claims for damages against South Street Seaport straddle the petition filing date, and because its alleged damages continue into the post-petition period, its proceeding is a core proceeding, citing *O'Sullivans Fuel Oil Co., Inc. v. Connecticut National Bank*, 88 B.R.

tween the state contract claim seeking damages in Marathon and the state contract claim seeking an injunction here").

17 (D.Conn.1988), and *Kenston Management Co., Inc. v. Lisa Realty Co.*, 137 B.R. 100 (E.D.N.Y.1992).

In both cases, however, the point at which the cause of action arose was critical. Because the causes of action did not exist on the date of the filing of the petitions, the contract disputes were held to be post-petition, core proceedings. In *O'Sullivans*, the Court held that although some of the defendant's allegedly wrongful acts occurred during the two months prior to the filing of the petition, the actions that caused the destruction of the debtor's business occurred post-petition: "A fair reading of the complaint indicates that at the date of the filing of the petition, no meaningful cause of action ... for damages yet existed that the debtor could assert." 88 B.R. at 20. Here, in contrast, Burger Boys' cause of action arose pre-petition. The counterclaims Burger Boys asserted in the pre-petition Summary Proceeding are identical to the claims in its post-petition Adversary Proceeding.

Although *Kenston* involved a pre-petition lease agreement, the adversary proceeding pertained to a breach of a different, post-petition contract, namely, a settlement agreement that was executed and breached post-petition. In holding that the adversary proceeding was a core proceeding, *Kenston* distinguished *Marathon* on precisely this basis: "In Marathon, ... the adversary proceeding involved not only a pre-petition contract, but a pre-petition breach of that contract." 137 B.R. at 105. The Adversary Proceeding here, as in *Marathon*, involves not only a pre-petition contract, but a pre-petition alleged breach of that contract. Because Burger Boys has failed to point to any factor that significantly distinguishes our case from *Marathon*, the Adversary Proceeding should be considered a noncore proceeding from which the Bankruptcy Court must abstain.

*J.T. Moran* supports this result. There, the Court, relying upon *Beard v. Braunstein*, 914 F.2d 434, 444–45 (3d Cir.1990), held that an adversary proceeding involving pre-petition contracts which were initially breached pre-petition but mainly breached post-petition, was a noncore proceeding. Despite the fact that the alleged breaches straddled the filing date of the debtor's Chapter 11 petition, as Burger Boys argues they do here, the Court held that because the money sought to be recovered was not in the actual or constructive possession of the bankruptcy court nor the debtor and thus was not subject to a turnover proceeding (which 28 U.S.C. § 157(b)(2)(E) characterizes expressly as core), the adversary proceeding was noncore.

### B. *Relief from the Automatic Stay under 11 U.S.C. § 362*

■ The burden of proof on a motion to lift or modify an automatic stay is a shifting one. Section 362(d)(1) requires an initial showing of "cause" by the movant. Once the movant establishes "cause," the burden of proof shifts to the debtor. 11 U.S.C. § 362(g)(1). Burger Boys argues that the Bankruptcy Court erred in granting relief from the stay because the movant failed to show "cause".

■ "Cause" is defined neither by the statute nor its legislative history. In *Sonnax Industries, Inc. v. Tri Component Corp.*, 907 F.2d 1280 (2d Cir.1990), the Court looked to the caselaw for guidance and adopted a series of twelve factors, originally set out in *In re Curtis*, 40 B.R. 795 (Bankr.D.Utah 1984), which were weighed to determine whether to allow a creditor to continue litigation in another forum.[6] Because of the unstructured

---

**6.** The *Curtis* factors are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgement claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. 907 F.2d at 1286.

nature of the issues under analysis, *Sonnax* found that existing caselaw indicated that the "decision of whether to lift the stay [is committed] to the discretion of the bankruptcy judge." 907 F.2d at 1286. A bankruptcy court's decision to grant relief from the automatic stay may be overturned only upon a finding that the court abused its discretion. 907 F.2d at 1286.

■ Burger Boys argues that the Bankruptcy Court erred in granting relief from the automatic stay because it failed specifically to address or, in any event, to weigh properly the *Curtis* factors. Although *In re Abrantes Construction Corp.*, 132 B.R. 234 (N.D.N.Y.1991), provides some authority for the proposition that the Court erred because it did not specifically address each of the *Curtis* factors, remand on that ground is not appropriate here since the record is clear that no abuse of discretion occurred.

*Sonnax* did not expressly require specific consideration of the *Curtis* factors nor did it consider each one. Other courts have expressly held that *Sonnax* does not require consideration of each of the factors: "only those factors relevant to a particular case need by considered, ... and the Court need not assign them equal weight." See *In re Helen Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y.1994). See also *In re Keene Corporation*, 171 B.R. 180, 183 (Bankr.S.D.N.Y. 1994).

It is evident from the record that the Bankruptcy Court did consider five of the *Curtis* factors, albeit not by name: (a) The Court ascertained whether relief would result in a partial or complete resolution of the issues by inquiring how the whole case, including Burger Boys' counterclaims, could be tried in Civil Court and made arrangements for full relief by conditioning its abstention Order on South Street Seaport's consent to the transfer of Burger Boys' counterclaims to State Court;[7] (b) In its determination that the Adversary Proceeding was a noncore proceeding from which it was required to abstain, the Court essentially decided that litigation of the issues in another forum would not interfere with the bankruptcy proceeding;[8] (c) The Court addressed how best to serve the interests of judicial economy and the expeditious and economical resolution of the litigation;[9] (d) The Court knew the parties were ready for trial in the other proceeding, because Burger Boys had filed its Chapter 11 petition "on the eve of the Civil Court trial";[10] (e) The Court balanced the harms and impact of the stay on the parties by crafting an order that permitted Burger Boys an extension of sixty days to assume or reject the lease during which time the automatic stay would continue, provided South Street Seaport received use and occupancy fees. And, the Court abstained under an arrangement that would allow both parties to litigate their claims fully.

■ Although Burger Boys argues that seven of the *Curtis* factors are implicated in this case, it essentially makes one point as to why the balance of harm weighs in favor of continuing the automatic stay—it will have to litigate in three different forums[11] at a prohibitive cost. Since it cannot afford to litigate its claims at such a cost, it claims the lease will be lost and the business will be forced into liquidation to the detriment of not only itself, but also all of its creditors. The validity of this claim is an issue of fact. The Bankruptcy Court's weighing of this factor may be overturned only if found to be "clearly erroneous." Courts have held, however, that the increased costs of litigating in a particular forum are not so prejudicial as to require continuance of a stay. See, e.g., *In re Keene Corporation*, 171 B.R. 180, 185 (Bankr.S.D.N.Y.1994). Furthermore, there is no evidence in the record regarding the validity of Burger Boy's claim that it will be forced into liquidation if the stay were lifted.

The decision to grant relief from the automatic stay is logical within the context of the Bankruptcy Court's determination that it

---

7. Transcript of Hearing, June 21, 1994, pp. 5–8.

8. Id. at 9–10.

9. Id. at 20.

10. Id. at 24.

11. The summary nonpayment proceeding will remain in the Civil Court of the City of New York; the Appellant's counterclaims will be removed or transferred to the State Supreme Court; and, the Chapter 11 bankruptcy proceeding will be conducted in the Bankruptcy Court.

must abstain from Burger Boys' Adversary Proceeding. Unable to provide relief itself, the Bankruptcy Court lifted the stay in order to allow timely adjudication of the issues in appropriate forums that could provide complete relief. If the Bankruptcy Court had abstained and denied the order for relief from the stay on the Summary Proceeding, the effect would have been to give Burger Boys an arbitrary advantage over South Street Seaport in choice of forum matters. See *In re Frigitemp,* 8 B.R. 284 (Bankr. S.D.N.Y.1981). South Street Seaport would have been stayed from continuing with its Summary Proceeding in Civil Court, but Burger Boys would have been able to proceed with its Adversary Proceeding (which the Bankruptcy Court found merely duplicates the claims and defenses in the previously filed Summary Proceeding) in the State Supreme Court.

Because there is no evidence to support a conclusion that the Bankruptcy Court erred in weighing the *Curtis* factors or balancing the hardships to the parties, the Order of the Bankruptcy Court granting relief from the automatic stay was proper. For the foregoing reasons, the Bankruptcy Court's Order of June 21, 1994 is affirmed in all respects.

SO ORDERED.