In re MONTAGUE PIPELINE
TECHNOLOGIES CORP.,
Debtor.

MONTAGUE PIPELINE
TECHNOLOGIES
CORP., Plaintiff,

v.

GRACE/LANSING & Grace Industries,
Inc., Defendants.

Bankruptcy No. 196–17293–260.
Adversary No. 196–1545–260.

United States Bankruptcy Court,
E.D. New York.

May 27, 1997.

Kaye, Scholer, Fierman, Hays & Handler, L.L.P., New York City by Craig P. Rieders, Vincent A. De Iorio Law Firm, Purchase, NY by Vincent A. De Iorio, for defendants.

Tenzer Greenblatt, Fallon & Kaplan, New York City by Michael Brownstein, Edward J. LoBello, for debtor.

Cullen & Dykman, Garden City, NY by Peter J. Mastaglio, Special Counsel to debtor.

## DECISION ON MOTION TO REMAND ACTION TO CONFIRM ARBITRATION AWARD AND FOR RELIEF FROM THE AUTOMATIC STAY

CONRAD B. DUBERSTEIN, Chief Judge.

This matter comes before the Court on the motion of the joint venture Grace–Lansing and Grace Industries, Inc. for an order, pursuant to 28 U.S.C. § 1452(b) and Federal Rule of Bankruptcy Procedure 9027, to remand adversary proceeding number 196–1545–260 back to the New York State Supreme Court, Kings County. Grace Industries and Grace–Lansing's motion also seeks relief from the automatic stay, in accordance with 11 U.S.C. § 362(d), to allow the confirmation of an arbitration award obtained in its favor to continue in New York State Supreme Court, Kings County, including the entry of judgment and any appeal which may follow. After consideration of the motion and the opposition filed by the Debtor, and for the reasons stated below, Grace–Lansing and Grace Industries, Inc.'s motion to remand adversary proceeding number 196–1545–260 back to state court and for relief from the automatic stay is granted.

## FACTUAL BACKGROUND

Montague Pipeline Technologies, Inc. (hereinafter referred to as the "Debtor") is a Delaware corporation engaged in fuel and thermal distribution pipeline construction. The Debtor is a wholly-owned subsidiary of Gas Energy, Inc., which in turn is a wholly-owned subsidiary of the Brooklyn Union Gas Company. The Debtor's financial problems emanated from a 1992 construction project at Kennedy International Airport (the "Project"). In the spring of 1992 the Debtor, acting as a subcontractor to the Project's general contractor, entered into a contract with the joint venture formed by Grace–Lansing and Grace Industries, Inc. (hereinafter referred to as "Grace"). The contract provided that Grace would act as a subcontractor to the Debtor and perform certain installation and construction work on the airport's thermal distribution system and mechanical equipment rooms. Work on the Project commenced shortly thereafter and continued through late 1994 despite several disputes which arose between the Debtor and Grace regarding the terms of the contract and Grace's performance. As a result of these disputes, Grace and the Debtor entered into a modification agreement which provided that work would continue on the Project and that any disputes would be resolved through arbitration.

At the conclusion of the Project, Grace and the Debtor submitted their disputes to arbitration. The modification agreement provided the terms of the arbitration, including the selection of arbitrators. Under the agreement, Grace and the Debtor could each select one arbitrator, and those arbitrators selected would then choose the third member of the panel. Grace selected Peter Mazza, the Debtor selected Gerard R. Lawrence and the two arbitrators named George Rieder as the chairman of the panel. Each party was to pay the fee of its respective arbitrator and they would split the chairman's fee. In the course of what became an extensive arbitration, Grace asserted numerous claims against the Debtor totaling approximately $7,000,000, while the Debtor filed counterclaims totaling approximately $2,600,000. After eight days of initial hearings the Debtor moved by order to show cause before the New York State Supreme Court, Kings County to stay the arbitration and disqualify the arbitrator selected by Grace. The Debtor alleged that Arbitrator Mazza was not impartial because he had engaged in improper *ex parte* contact with Grace and because his fees were significantly higher than those of the other arbitrators. By order dated September 28, 1995

Supreme Court Justice Gloria Aronin denied the Debtor's application to disqualify Arbitrator Mazza and removed any stay imposed on the arbitration proceedings. The Debtor timely filed an appeal from Justice Aronin's order in the Appellate Division, Second Department. The Debtor also requested an expedited appeal and a stay of all proceedings pending appeal. By order dated October 16, 1995 the Appellate Division denied the Debtor's request for a stay and for an expedited appeal.

Following the entry of Justice Aronin's order the arbitration proceedings continued. The arbitration consisted of a total of fifty-seven hearings over a sixteen month period, the last hearing being held on June 20, 1996. Over the course of the hearings, some thirty witnesses testified, more than five hundred documents were introduced and over eight thousand pages of transcript were produced. On June 30, 1996 the arbitration panel issued its decision. The panel awarded Grace $6,513,942 while the Debtor was awarded $428,734. The net difference, $6,085,208, is the amount Grace now seeks from the Debtor. After the arbitrators' decision, Grace moved by order to show cause in New York Supreme Court, Kings County to confirm the award pursuant to Article 75 of the New York Civil Practice Law and Rules. A hearing on the order to show cause to confirm the arbitration award was initially scheduled for late July, 1996 but was stayed when the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on July 30, 1996 which initiated this case. Shortly after filing its petition, the Debtor filed a notice of removal in this Court, pursuant to 28 U.S.C.

§ 1452(a) and Federal Rule of Bankruptcy Procedure 9027, seeking to remove the action to confirm the arbitration award and the appeal of Justice Aronin's decision refusing to disqualify Grace's selected arbitrator.[1] Grace now brings the instant motion, seeking remand of the action to confirm the arbitration award (alternatively referred to as the "state court action") and relief from the automatic stay to allow that action to continue in the state court.

## DISCUSSION

Grace's motion first requests that the action to confirm the arbitration award be remanded to New York State Supreme Court, Kings County pursuant to 28 U.S.C. § 1452(b). Section 1452(b) states in pertinent part that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b).

The first level of inquiry in evaluating a request for remand is to examine whether the action was properly removed. *See Hatcher v. Lloyd's of London*, 204 B.R. 227, 229 (M.D.Ala.1997). Removal is governed by 28 U.S.C. § 1452(a).[2] Section 1452(a) provides that removal is proper as long as the district court has jurisdiction over the action under 28 U.S.C. § 1334. Section 1334(a) provides federal district courts with "original and exclusive jurisdiction of all cases under title 11" and § 1334(b) provides courts with original but not exclusive jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a),(b).[3]

1. As part of the instant dispute, the Debtor contends that by filing the notice of removal it has removed to this Court both the pending appeal of Justice Aronin's decision and the action to confirm the arbitration award. By an order dated January 30, 1997 this Court ruled that the Appellate Division may proceed to adjudicate the pending appeal. This Court was recently informed that the Appellate Division has affirmed Justice Aronin's decision. Thus Grace's request for remand now relates only to the action to confirm the arbitration award.

2. Section 1452(a) provides:

A party may remove any claim or cause of action in a civil action other than a proceeding

before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.
28 U.S.C. § 1452(a).

3. The jurisdictional grant in § 1334 is applicable to the Bankruptcy Court through 28 U.S.C. § 157(a), which allows the District Court to refer the jurisdiction granted to it by § 1334 to the Bankruptcy Court. There is a standing order of reference, dated August 28, 1986, in the Eastern District of New York referring all such matters to the Bankruptcy Judges within this District. *See*

A proceeding is one "arising under title 11" if the claims asserted in it are predicated on a right created or determined by title 11. *See Wood v. Wood (In re Wood)* 825 F.2d 90, 96 (5th Cir.1987); *World Travel Vacation Brokers, Inc. v. Bowery Sav. Bank (In re Chargit Inc.)*, 81 B.R. 243, 247 (Bankr. S.D.N.Y.1987). An example of a proceeding "arising under" title 11 might include a preference action or an exemption claim under 11 U.S.C. § 522. *See St. Vincent's Hosp. v. Norrell (In re Norrell)*, 198 B.R. 987, 993 (Bankr.N.D.Ala.1996). A proceeding "arising in" a case under title 11 includes administrative matters that are found only in bankruptcy and which do not exist outside of a bankruptcy case. *See In re Chargit, Inc.*, 81 B.R. at 247 (citing *In re Wood*, 825 F.2d at 97). "Arising in" proceedings can include the filing of proofs of claim and the allowance or disallowance of claims, turnover actions, objections to discharge and confirmation hearings. *See In re Norrell*, 198 B.R. at 993 (citing CASE MANAGEMENT MANUAL FOR UNITED STATES BANKRUPTCY JUDGES, FEDERAL JUDICIAL CENTER, 1995). Finally, proceedings "related to" a case under title 11 are generally described as those "non-core" proceedings whose outcome "could conceivably have an effect" on the administration of the bankruptcy estate.[4] *See Nemsa Establishment, S.A v. Viral Testing Sys. Corp.*, No.95 Civ. 0277(LAP), 1995 WL 489711, at *2 (S.D.N.Y. 1995); *Hunnicutt Co., Inc. v. TJX Cos., Inc. (In re Ames Dep't. Stores, Inc.)*, 190 B.R. 157, 160 (S.D.N.Y.1995); *In re Chargit Inc.*, 81 B.R. at 247 (citing *In re Wood*, 825 F.2d at 93).

Based on these definitions, it is clear that under 28 U.S.C. §§ 1334 and 157 this Court has jurisdiction over the removed state court action.[5] An action to confirm an arbitration award is not an administrative action "arising under" the Bankruptcy Code, nor is an action to confirm an arbitration award a matter "arising in" a case under title 11 because the removed action would exist outside of the bankruptcy context. Such an action does, however qualify as a proceeding "related to" a bankruptcy case. The result of an action to confirm an arbitration award "could conceivably have an effect," on the bankruptcy estate in that, depending upon the outcome the estate will either be enlarged or decreased, thereby determining the corresponding return to unsecured creditors. Because the state court action to confirm the arbitration award is a proceeding "related to" the Debtor's bankruptcy case, jurisdiction exists pursuant to § 1334(b). Therefore the state court action was properly removed under § 1452(a) and this Court may consider Grace's request for remand.

The standard employed by courts in the Second Circuit for determining whether to grant a request for remand on "equitable grounds" under § 1452(b) was enunciated in *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405 (S.D.N.Y. 1991). In remanding a removed state court action brought by the debtor for breach of contract and declaration of insurance coverage, the *Drexel* court employed seven factors to determine whether it was appropriate to exercise jurisdiction. The seven factors are as follows:

(1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a

"Standing Order of Referral of Cases to Bankruptcy Judges for the Eastern District of New York" (Weinstein, C.J.).

4. "Core" proceedings are described in 28 U.S.C. § 157(b)(2) and generally include actions arising under title 11 or arising in title 11 cases, while actions which are related to cases under title 11 are generally considered "non-core" proceedings. *See Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 409 n. 2 (S.D.N.Y.1991).

5. Because this Court may properly exercise jurisdiction over the removed action, the parties' claims regarding the core or non-core nature of the state court action are largely academic. The core/non-core distinction relates to this Court's authority to determine the questions presented, but the distinction does not affect this Court's ability to exercise jurisdiction over the state court action and the instant motion to remand. *See In re Norrell*, 198 B.R. at 994, n. 5; *Lipshie v. AM Cable TV Indus., Inc. (In re Geauga Trenching Corp.)*, 110 B.R. 638, 644 (Bankr.E.D.N.Y.1990).

jury trial; (7) prejudice to the involuntarily removed defendants.

*Id.* at 407 (citations omitted); *accord In re 183 Lorraine St. Assocs.*, 198 B.R. 16, 32 (E.D.N.Y.1996) (employing the *Drexel* factors to evaluate remand). When applied to the instant dispute, the *Drexel* factors dictate that this Court decline to exercise jurisdiction and accordingly grant Grace's motion to remand to the state court the action to confirm the arbitration award.

Analysis of the first *Drexel* factor reveals that remand of the arbitration proceeding will assist in the efficient administration of the bankruptcy estate. *Drexel*, 130 B.R. at 407. The arbitration action was in its final phase when the Debtor removed it to this Court. The parties had completed the substance of the arbitration and all that remained was confirmation of the award. If this Court were to occupy itself with the remaining portion of an essentially state court action, it would actually impede the efficient administration of the bankruptcy estate as significant delay might result from this Court's full docket. *See Drexel*, 130 B.R. at 408 (noting that retention of state court action could "detract from the efficient administration of the estate"). An action such as the confirmation of an arbitration award does not require any "special expertise" which the bankruptcy court may have. *Cf. In re Craft Architectural Metals Corp.*, 115 B.R. 423, 431 (E.D.N.Y.1989) (noting bankruptcy court's own crowded docket and lack of expertise as reasons for not hearing state court action). Instead, remand of the state court action will allow this Court to focus its attention on a docket already crowded with matters directly related to the administration of this and other bankruptcy cases. *See Southmark Prime Plus, L.P. v. Southmark Storage Assocs. Ltd. Partnership*

*(In re Southmark Storage Assocs. Ltd. Partnership)*, 132 B.R. 231, 233 (Bankr.D.Conn. 1991). Further efficiency will be achieved through remand because the confirmation of an arbitration award occurs by means of a "summary proceeding." *See Ray v. McDowell* 143 Misc.2d 347, 540 N.Y.S.2d 660, 661 (N.Y.Civ.Ct.1989); *Barnes v. Maryland Cas. Co.*, 124 Misc.2d 942, 478 N.Y.S.2d 565, 566 (N.Y.Civ.Ct.1984). While it seeks a final judgment, a summary proceeding may be brought on with the expeditious speed of a motion. *See* DAVID D. SIEGEL, NEW YORK PRACTICE § 4, at 5 (2d ed.1991). Because such an efficient means of confirming the arbitration award is available in the state court, this Court will not entertain what has until now been a state court dispute. To do otherwise would not effectively enhance the administration of the Debtor's bankruptcy.[6]

The second *Drexel* factor used in analyzing a request for remand is the extent to which issues of state law predominate in the removed action. *Drexel*, 130 B.R. at 407. This factor clearly favors remand of the action to confirm the arbitration award. Both the subject matter and the procedure of the action to confirm the arbitration award are governed by state law. Until the Debtor filed for relief under Chapter 11, the contract dispute between Grace and the Debtor was litigated in state court, and state substantive law was predominantly employed by the parties. There was no indication prior to the instant motion that federal law governed the matter. The procedural posture of the action to confirm the arbitration award is also a province of state law. The action to confirm the arbitration award was brought in New York Supreme Court, pursuant to Article 75 of the Civil Practice Law and Rules. N.Y. C.P.L.R. 7510 (McKinney 1980). This final act of confirming an arbitration is purely a

---

**6.** The Debtor contends that estate administration would be enhanced by the bankruptcy court's retention of jurisdiction over the state court dispute. Because Grace has filed a proof of claim in the Debtor's Chapter 11 case, to which the Debtor has filed an objection, the Debtor argues that retaining the state court dispute will allow this Court to resolve the arbitration confirmation and at the same time determine the amount of Grace's claim. However, this is not the most efficient means by which to resolve the Debtor's

objection to Grace's claim. Once the state court has confirmed the arbitration award, the bankruptcy court's function in evaluating the claim would be "ministerial unless there are significant bankruptcy issues that require other action." *In re Norrell*, 198 B.R. at 993–94, n. 5. This limited involvement by the bankruptcy court would be the most efficient use of judicial resources as it would allow the bankruptcy court to focus on purely bankruptcy law matters and leave resolution of state law issues to the state court.

state law procedure, and again no federal law is implicated. The Court finds that there is no need to introduce new substantive and procedural law into the dispute given the fact that the arbitration process is close to completion.

As part of its opposition to Grace's motion, the Debtor claims that the instant dispute is in actuality governed by federal law. This contention is based on the fact that the underlying contract between Grace and the Debtor arose from a construction project at Kennedy International Airport, with the workers and suppliers on the project coming from numerous states and countries. Thus, because the contract involved and affected interstate commerce the Debtor concludes that the Federal Arbitration Act (the "FAA") should govern the dispute. The Debtor contends that because federal law is involved, the bankruptcy court should exercise jurisdiction and apply federal law in confirming the arbitration award. Despite the Debtor's contentions, this Court finds that the state court is the appropriate forum to confirm the arbitration award. Both parties have relied almost exclusively on New York law in this dispute. To introduce a new set of substantive and procedural law would mean that the parties would be required to redraft their arguments and submit new pleadings. This would be a tremendous waste of the work that has already been performed by both sides and would further drain the Debtor's limited resources by increasing administrative expenses. Thus the confirmation action should be remanded to state court according to the second *Drexel* factor.

The third *Drexel* factor for remand on equitable grounds is the difficult or unsettled nature of the applicable state law. *Drexel*, 130 B.R. at 407. Grace does not argue that the state law applicable to the confirmation of an arbitration award is unsettled or especially difficult. Instead, it contends that this factor is not particularly relevant in the analysis of the remand issue before this Court. The Debtor argues that under state law the

confirmation of an arbitration award is a simple "ministerial act" which could easily be carried out by this Court and thus this factor militates in favor of this Court retaining jurisdiction. This Court finds that any lack of complexity in the applicable state law does not require that Grace's motion for remand be denied. If confirmation of an arbitration award is a "mere ministerial act" as the Debtor contends, this is all the more reason to allow the state court to conclude an arbitration with which it has been intimately involved for more than a year. As stated earlier, the confirmation of an arbitration award does not call upon any special expertise of the bankruptcy court. Combined with the fact that an action to confirm an arbitration award is a rapid summary proceeding under Article 75, it is clear that the state court can efficiently handle Grace's motion to confirm. *See Rednel Tower, Ltd. v. Riverside Nursing Home (In re Riverside Nursing Home)*, 144 B.R. 951, 956–57 (S.D.N.Y. 1992) (noting that state courts are generally "better able to respond to actions primarily involving state law" especially when an expeditious summary proceeding is available). Thus the simplicity of the applicable state law is not a justification for this Court to interject itself in the proceedings at this late stage.

The fourth *Drexel* factor, comity, greatly favors remanding the action to confirm the arbitration award back to state court. *Drexel* 130 B.R. at 407. The Debtor claims there is no need for this Court to defer to the state court as only certain "discrete and limited issues of law" would be argued at the confirmation proceeding, and this would not require the bankruptcy court to retry the entire arbitration proceeding.[7] But the Debtor's contention appears disingenuous given that these "discrete" issues go to the heart of the arbitration. Accepting the Debtor's argument, there is a possibility that the confirmation proceeding will be significantly more involved than the Debtor would

---

7. According to the Debtor, these "discrete" issues would include the arbitrators' hearing and determination of issues the Debtor contends are outside the scope of the arbitration agreement, as well as the alleged impropriety by Arbitrator Mazza, which as previously noted has been rejected by the Appellate Division. (Debtor's Supplemental Mem. Law Opp'n. at 9).

have this Court believe.[8] As noted earlier, the state court has already had significant involvement with this arbitration proceeding, including hearing the Debtor's order to show cause to disqualify Arbitrator Mazza and issuing the order to show cause to confirm the arbitration award. In fact, a hearing on the confirmation of the arbitration award had already been scheduled at the time the Debtor filed its Chapter 11 petition. *See SBKC Serv. Corp. v. 1111 Prospect Partners, L.P. (In re 1111 Prospect Partners, L.P.)*, 204 B.R. 222, 226 (Bankr.D.Kan.1996) (remanding state court suit on grounds of efficiency where action had been in state court for over one year and state court judge was close to decision when bankruptcy petition was filed, thus halting state proceedings). Out of respect for the state court's prior involvement in the arbitration, this Court will not exercise jurisdiction over the action to confirm the arbitration award.[9]

The fifth factor employed by the *Drexel* court in considering a motion for remand is the relatedness or remoteness of the proceeding to the bankruptcy case. *Drexel*, 130 B.R. at 407. The Debtor contends that the action to confirm the arbitration award is the "focal point" of its Chapter 11 case as Grace's claim constitutes over 90% of the total claims against it. (Debtor's Mem. Law Opp. at 11.) Grace responds that the legal

and factual grounds for the arbitration are unrelated to the Debtor's Chapter 11 case. This Court is inclined to agree with the Debtor in its characterization of the importance of the arbitration to the Debtor's Chapter 11 reorganization. However, the subject of Grace's remand motion is not the arbitration proceeding itself but rather the confirmation of the arbitration award. Confirmation of the award is significantly less related to the reorganization than the substance of the arbitration itself, and given its procedural posture it is appropriate to allow the state court to confirm the arbitration award. Despite any relationship the arbitration may have to the Debtor's bankruptcy case, the importance of this factor is overshadowed by the other *Drexel* factors which strongly favor remand.

The sixth factor enunciated by the *Drexel* court is the existence of a right to jury trial in the removed matter. Neither party acknowledged any right to a jury trial in the confirmation proceeding and the Court finds this factor to be irrelevant.

The final *Drexel* factor used to evaluate a request for remand pursuant to § 1452(b) is the prejudice to the involuntarily removed party. *Drexel*, 130 B.R. at 407. Grace claims that it will be severely prejudiced if the action to confirm the arbitration award is allowed to remain in the bankruptcy court

---

8. The statement by the Debtor that these "discrete" issues would be part of the confirmation also appears to negate the Debtor's contention that the confirmation of an arbitration award is a "mere ministerial act." This would buttress this Court's finding above that the third *Drexel* factor (the difficult nature of applicable state law) favors remand.

9. In arguing that concerns of comity favor retention of jurisdiction by the bankruptcy court, the Debtor relies on the Second Circuit Court of Appeals decision in *Ballantine Books, Inc. v. Capital Distrib. Co.*, 302 F.2d 17 (2d Cir.1962). However, *Ballantine* is not directly applicable to the present dispute. The issue presented in *Ballantine* was whether the court had jurisdiction over a proceeding to confirm an arbitration award when, according to the appellant, the state court had already "assumed" jurisdiction. *Id.* at 18–19. The *Ballantine* court was not faced with an action removed from state court, but was instead presented with an "independent federal court proceeding." *Id.* at 19. This contrasts to the instant dispute where the state court action was properly removed and where this Court

clearly has jurisdiction pursuant to 28 U.S.C §§ 1334 and 157 to hear the confirmation proceeding. Whether the state court had "assumed" jurisdiction over the instant arbitration became irrelevant when the Debtor removed the confirmation proceeding pursuant to § 1452. In accordance with its consideration of the fourth *Drexel* factor, comity, this Court examined the state court's involvement in the arbitration action prior to the removal and found it to be significant. *Ballantine* does not dictate a contrary result, as even the Second Circuit Court of Appeals stated in its opinion that there might be a situation where "a state court has proceeded so far in the supervision of an arbitration that it would be an abuse of discretion for the federal court to intrude itself." *Ballantine*, 302 F.2d at 20. The Second Circuit further urged that the "practicalities of the situation" should dictate the federal court's involvement. *Id.* This Court finds that the "practicalities of the situation" favor remand of the proceeding to confirm the arbitration award.

because a summary proceeding equivalent to New York's Article 75 action is not available in federal court. In response, the Debtor argues that the bankruptcy court can itself adjudicate the confirmation action in a summary manner through the use of expedited hearings or motion practice, thus eliminating any prejudice Grace may suffer if the matter were to remain in bankruptcy court. However, the Debtor's contentions belie the reality that if this Court exercises jurisdiction over the removed action both Grace and the Debtor could be prejudiced. If the removed action remains in bankruptcy court, the Debtor insists that federal law (specifically the FAA) would apply. If the Court were to find this the case, both parties would be forced to reformulate their arguments and pleadings according to federal law, thereby increasing both parties' costs. A change in governing law could also create a significant delay while the parties modify their pleadings. Any such delay would be detrimental to the Debtor as it would further postpone the formulation of a feasible plan of reorganization. In addition, as previously discussed, further prejudice may result from delay due to this Court's already crowded docket. The possibility of prejudice to both the Debtor and Grace if this action were to remain in bankruptcy court favors remand of the state court action.

Analysis of all seven of the *Drexel* factors reveals that remand pursuant to § 1452(b) is appropriate. Remand to the state court where an expeditious summary proceeding is available is the most efficient means of finalizing the arbitration with Grace. This will allow the Debtor to formulate a confirmable plan of reorganization. Therefore, this Court remands the action to confirm the arbitration award back to New York State Supreme Court, Kings County.

■ As an alternate ground for relief, Grace also requests in its motion that this Court mandatorily abstain from hearing the action to confirm the arbitration award. Section 1334(c)(2) states that with respect to an action which could not have been commenced in federal court absent the jurisdiction provided in § 1334, the court shall abstain from hearing such an action if the action is commenced and can be timely adjudicated in a state forum of appropriate jurisdiction. 28 U.S.C. § 1334(c)(2). Commonly known as "mandatory abstention," this section provides that a court must refrain from hearing certain proceedings despite the fact that it could exercise jurisdiction. However, the applicability of abstention in the context of a removed action is the subject of great controversy among the courts. *See Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 773–74 (10th Cir. BAP 1997) (citing numerous courts that have faced the question of whether abstention and remand may be applied simultaneously). While Grace has argued that the action to confirm the arbitration award ought to be remanded because mandatory abstention applies, this Court refuses to remand on such grounds. A significant number of courts in the Second Circuit have held that abstention does not apply to a removed action. *See Arstk, Inc. v. Audre Recognition Sys., Inc.*, 1996 WL 229883 (S.D.N.Y.1996); *Neuman v. Goldberg*, 159 B.R. 681 (S.D.N.Y.1993); *Weisman v. Southeast Hotel Properties Ltd. Partnership*, 1992 WL 131080 (S.D.N.Y.1992); *General Am. Corp. v. Merrill Lynch Commodities (In re Ross)*, 64 B.R. 829 (Bankr.S.D.N.Y.1986); *Paul v. Chemical Bank (In re 666 Assocs.)*, 57 B.R. 8 (Bankr.S.D.N.Y.1985). Courts from other circuits have also noted that abstention and remand should not be employed together. *See Lorence v. Does 1 Through 50 (In re Diversified Contract Servs., Inc.)*, 167 B.R. 591 (Bankr.N.D.Cal.1994); *Southern Marine and Indus. Servs., Inc. v. AK Eng'g, Inc. (In re AK Servs., Inc.)*, 159 B.R. 76 (Bankr.D.Mass.1993); *Fedders North Am. Inc. v. Branded Prods., Inc. (In re Branded Prods., Inc.)*, 154 B.R. 936, 939 (Bankr. W.D.Tex.1993); *Bleichner Bonta Martinez & Brown, Inc. v. National Bank (In re Micro Mart, Inc.)*, 72 B.R. 63, 64 (Bankr.N.D.Ga. 1987). While the opinions in this Circuit are not unanimous regarding the application of abstention principles to a removed action, this Court is persuaded by those cases which find it inappropriate to employ abstention to an action removed pursuant to § 1452.

■ Courts which have declined to apply abstention principles to a removed action

base their decision on two grounds. The first is that abstention requires a pending proceeding in state court, but upon filing a notice of removal there is no longer a state court action. *See Arstk, Inc.,* 1996 WL 229883 at *3–4; *Weisman,* 1992 WL 131080 at *5 (noting that the statute precludes the application of abstention to a removed action because there is no parallel state court case). As one court has stated, "[t]he language of § 1334(c)(2) reflects that the mechanics are premised on the existence of two proceedings: one in the bankruptcy court and a second one in the state court." *In re 666 Assocs.,* 57 B.R. at 12; *see also In re Diversified Contract Servs., Inc.,* 167 B.R. at 596 (finding that only the remand statute applies to removal). Removal of an action is effected upon the filing of the notice of removal and thereafter the parties may no longer proceed in the original court until the action is remanded. FED. R. BANKR.P. 9027(c). Thus, upon filing a proper notice of removal there is but one action and that is the action which has been removed to the district (or bankruptcy) court. If the court were to apply abstention principles and "refrain from hearing" a removed action, the action would no longer progress. Instead it would lie dormant, since the only court that could hear the action was "refraining from hearing" it. Other courts, while not facing a request for remand, have also found that the application of abstention requires a *pending* state court proceeding. *See In re Craft Architectural Metals Corp.,* 115 B.R. 423 (E.D.N.Y.1989) (finding mandatory abstention appropriate where there were two separate proceedings, one in state court and one in bankruptcy court); *Baitinger Elec. Co., Inc. v. Daidone Elec., Inc. (In re Baitinger Elec. Co., Inc.)* 94 B.R. 33, 35 (S.D.N.Y.1988); *Hackeling v. Rael Automatic Sprinkler Co., Inc. (In re Luis Elec. Contracting Corp.,),* 165 B.R. 358, 366 (Bankr.E.D.N.Y.1992); *Kolinsky v. Russ (In re Kolinsky),* 100 B.R. 695, 704 (Bankr. S.D.N.Y.1989). This Court finds that the cases cited above properly reconcile the doctrines of remand and abstention. Requiring the existence of a pending state court action for the application of abstention most closely follows the language of the statute and provides a clear delineation of when the doctrine applies. This Court will not apply mandatory abstention to removed actions because upon removal there is no longer a pending state court action.

The second basis on which courts decline to exercise abstention in conjunction with a removed action is the lack of reference to abstention in the statute governing remand, thus indicating that the two doctrines should not be applied together. The statute governing removal, 28 U.S.C. § 1452(a) contains a direct reference to § 1334. Section 1452(a) states that an action is properly removed only if the court can exercise jurisdiction over that action pursuant to § 1334. In contrast to this direct reference in subsection "a" of § 1452, that portion of the statute governing remand (subsection "b") does not directly reference the abstention statute. *See In re Ross,* 64 B.R. at 834–35 ("Had Congress wanted the court to look to 28 U.S.C. § 1334(c)(1) or (2) in determining whether a removed action should be remanded to the court from which it came Congress would have so stated in 28 U.S.C. § 1452(b)."). Because § 1452(b) provides no indication that abstention principles should apply in the remand context, this Court will apply only the doctrine of remand to removed actions.[10] Accordingly, Grace's alternate request for this Court to mandatorily abstain from hearing the state court action is

---

10. Not all courts in this Circuit refuse to employ abstention with removed actions. *See Channel Bell Assocs. v. W.R. Grace & Co.,* 1992 WL 232085 (S.D.N.Y.1992). The court in *Channel Bell* found that the remand statute does reference the abstention statute, thereby signifying that the two doctrines are to be applied together. *Id.* at *7. However, we are not persuaded by this statutory analysis. Although § 1452(b) states that a court "to which such claim or cause of action is removed" may exercise remand, such reference does not incorporate *all* of § 1334. Instead, the phrase "such claim or cause of action" merely refers to those actions properly removed under § 1452(a). As previously discussed, properly removed actions are those over which the court may exercise jurisdiction pursuant to § 1334(a) & (b). Section 1334 describes abstention in subsections (c)(1) & (c)(2). Therefore, the reference in § 1452(b) indirectly refers to the grant of jurisdiction in § 1334(a) & (b), and not to the forms of abstention mentioned in § 1334(c)(1) & (2).

denied, but the state court action should nevertheless be remanded on equitable grounds.[11]

In addition to remand, Grace's motion seeks relief from the automatic stay so that the state court action to confirm the arbitration award may continue up to judgment, including any appeals which may follow therefrom. Upon the filing of a petition in bankruptcy, a broad stay of litigation and proceedings against the debtor and the debtor's property is imposed. 11 U.S.C. § 362; *see also* 2 COLLIER'S ON BANKRUPTCY ¶ 362.01 (Lawrence P. King, ed. 15th ed., 1996). However, § 362(d)(1) provides that the court shall grant a party in interest relief from the stay "for cause." 11 U.S.C. § 362(d)(1). The Bankruptcy Code itself does not provide a definition of what constitutes "cause," but it has been held that cause can include a party's desire to continue an action pending in another forum. *See In re Anton* 145 B.R. 767, 769 (Bankr.E.D.N.Y.1992) (citing H.R.REP. No. 595, at 343–44 (1977)).

The burden of proof in a motion for relief from the automatic stay "for cause" is a shifting one. *See Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir.1990). The movant bears the initial burden of showing "cause" for relief, but once a *prima facie* case has been established, the debtor has the ultimate burden of proof to show that cause does not exist to grant relief from the stay. *See Burger Boys, Inc. v. South St. Seaport Ltd. Partnership (In re Burger Boys, Inc.)*, 183 B.R. 682, 687 (S.D.N.Y.1994).

In *In re Sonnax Industries, Inc.* the Second Circuit Court of Appeals listed several factors to be considered in determining whether "cause" exists to grant relief from the automatic stay in order to allow litigation to continue in another forum. *In re Sonnax Indus., Inc.*, 907 F.2d at 1286. The factors include:

1) whether relief would result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves the debtor as a fiduciary; 4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; 5) whether the debtor's insurer has assumed full responsibility for defending it; 6) whether the action primarily involves third parties; 7) whether litigation in another forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; 10) the interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the parties are ready for trial in the other proceeding; and 12) impact of the stay on the parties and the balance of harms.

*Id.* (citing *In re Curtis,* 40 B.R. 795 (Bankr. D.Utah 1984)). A court need not give equal weight to each factor and need not employ all of the *Sonnax* factors, but may instead apply only those factors which are appropriate. *See In re Anton,* 145 B.R. at 770. Furthermore, in using the *Sonnax* factors to determine "cause," the court should look at what is just to the debtor, the estate and the parties involved in light of the circumstances of the case. *See In re Keene Corp.,* 171 B.R. 180, 183 (Bankr.S.D.N.Y.1994). In this case, application of the *Sonnax* factors to the action to confirm the arbitration award reveals that Grace's motion for relief from the automatic stay should be granted.[12]

---

11. An additional alternative form of relief requested by Grace was for this Court to employ "discretionary abstention" pursuant to § 1334(c)(1) and refrain from hearing the state court action. Based upon this Court's finding that abstention principles do not apply to removed actions, we decline to employ discretionary abstention as well as mandatory abstention.

12. Grace's motion only seeks relief from the stay in order to pursue the confirmation action and any appeals which may follow from it. The Court grants Grace's request, but notes that Grace may take no action against the Debtor to enforce any judgment without further order from this Court while this case remains before it. *See In re Bicoastal Corp.,* 111 B.R. 999, 1003 (Bankr. M.D.Fla.1990) (allowing arbitration to continue but forbidding enforcement of any award without permission of the court).

The first *Sonnax* factor the Court finds applicable to the instant proceeding is whether relief would result in partial or complete resolution of the issues. *In re Sonnax Indus.*, 907 F.2d at 1286. Modification of the automatic stay to allow Grace to continue the state court action would clearly result in a complete resolution of the arbitration. If relief from the stay is granted and the confirmation action is allowed to continue, the amount of Grace's claim will be fixed. This will result in the withdrawal or denial of the Debtor's objection to the claim Grace filed in this Court and will facilitate the Debtor's Chapter 11 by allowing the Debtor to propose a realistic plan of reorganization. Thus once the state court has fully decided the issue of the Debtor's liability, the bankruptcy court can rely on the state court's decision to aid in the determination of the allowability of Grace's claim. *See In re Norrell* 198 B.R. at 994, n. 5. Therefore, granting Grace's motion for relief from the automatic stay in order to allow the confirmation action to continue in state court will result in complete relief regarding the arbitration between Grace and the Debtor because it will finalize the arbitration award and provide a fixed sum for Grace's claim.

The second *Sonnax* factor relevant to the instant dispute is the state court action's lack of any connection with or interference with the bankruptcy case. *In re Sonnax Indus.*, 907 F.2d at 1286. Although the magnitude of Grace's claim appears to make it intimately connected to the Debtor's reorganization, the current procedural posture of the arbitration action mitigates any such connection. While the result of Grace's action to confirm the arbitration award is likely to have a significant effect on the reorganization process, the action itself is a proceeding independent of the Debtor's bankruptcy. Granting relief from the stay to allow the confirmation action to continue will not interfere with the Debtor's bankruptcy case but will instead facilitate a speedy resolution of the issues. As previously mentioned in regard to Grace's request for remand, it is likely that delay will result if this Court hears the confirmation action. Such delay would negatively impact the Debtor's bankruptcy case and cause more interference than if the state court were allowed to hear the action.

The third relevant *Sonnax* factor in evaluating whether "cause" exists to grant relief from the automatic stay is the interests of judicial economy and the expeditious and economical resolution of litigation. *In re Sonnax Indus.*, 907 F.2d at 1286. This factor implicates similar considerations to those discussed in conjunction with Grace's request for remand of the state court action. In regards to Grace's request for relief from the automatic stay, this Court again notes that the state court was involved with this arbitration for over one year and that the parties were on the eve of the summary proceeding to confirm the arbitration award when the Debtor's bankruptcy petition was filed. *See Crown Heights Jewish Community Council, Inc. v. Fischer (In re Fischer)*, 202 B.R. 341, 355 (E.D.N.Y.1996) (granting relief from stay to allow litigation to continue where great judicial resources had already been expended outside of bankruptcy court). An expeditious summary proceeding to confirm the arbitration award is available in the state court, thus resolution of the arbitration in the state court is the most rapid and economical means of resolving these issues. Concerns regarding judicial economy and expeditious resolution of the litigation favor granting Grace relief from the automatic stay so as to allow the confirmation action to proceed in state court.

The fourth *Sonnax* factor to be considered is whether the parties are ready for trial in the other proceeding. *In re Sonnax Indus.*, 907 F.2d at 1286. The Debtor's contention that this factor is not relevant is incorrect. Although the court in *Sonnax* employed the word "trial," it is reasonable to conclude that the true inquiry under this factor is whether the litigation in question has reached an advanced stage. *Cf. Finizie v. City of Bridgeport (In re Finizie)*, 184 B.R. 415, 419 (Bankr.D.Conn.1995) (employing the "ready for trial factor" and lifting the stay where state court proceedings were at "final judgment" stage). While not an actual "trial," an action to confirm an arbitration award is an analogous proceeding in that it results in a final judgment. *See Whirlpool Corp. v. Phil-*

*ips Elecs., N.V.,* 848 F.Supp. 474, 478 (S.D.N.Y.1994) (noting that confirmation of an arbitration award "converts a final arbitration award into a judgement of the [c]ourt."). It is clear that the instant state court proceeding was in its final phase and the parties were prepared for "trial," as the hearing on Grace's order to show cause to confirm the arbitration award was just days away when the Debtor filed its bankruptcy petition. The parties' readiness to continue the state court action is further evidence of "cause" to grant relief from the automatic stay and allow the confirmation action to proceed.

The final *Sonnax* factor this Court will examine is the impact of the stay on the parties and the balance of harms. *In re Sonnax Indus.,* 907 F.2d at 1286. The analysis for this factor also raises similar considerations as those required in deciding whether to remand on equitable grounds. This Court's prior discussion reveals that it would clearly be prejudicial to the Debtor if the state court action were not allowed to continue. It is in the Debtor's interest to have Grace's claim finalized as soon as possible so that the reorganization may progress. As previously stated, the Debtor would be precluded from proposing a realistic plan of reorganization without having the confirmation award finalized. After weighing the impact of the stay and the balance of harms, this Court finds that Grace's motion for relief from the automatic stay should be granted.

In accordance with the factors enunciated in *Sonnax,* Grace has demonstrated that ample "cause" exists to grant relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1). The Debtor has not provided this Court with any justification for continuing the stay. The most efficient, expeditious and least prejudicial means of resolving Grace's claim is to allow the state court action to continue. Therefore, Grace's motion for relief from the automatic stay is granted in order to allow the state court action to continue with respect to the confirmation of the arbitration award, including any appeals which may follow therefrom.

CONCLUSION

1. This Court has jurisdiction over the instant matter pursuant to 28 U.S.C. §§ 1334 & 157(a), and the Standing Order of Referral of Cases to Bankruptcy Judges for the Eastern District of New York, dated August 28, 1986. Grace's motion for remand is a core proceeding within 28 U.S.C. § 157(b)(2)(A).

2. Grace's motion for remand, pursuant to 28 U.S.C. § 1452(b), of the state court action to confirm the arbitration award is granted.

3. Grace's request for relief from the automatic stay under 11 U.S.C. § 362(d)(1) is granted.

